IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| SAMUEL SAN MIGUEL, <br> Institutional ID No. 05687259, | § <br> § <br> § | |
| Plaintiff, | § <br> § | |
| v. | § <br> § | CIVIL ACTION NO. 5:19-CV-096-BQ |
| MARSHA McLANE, *et al.*, | § <br> § <br> § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION

Before the Court is a document filed May 24, 2019, by pro se Plaintiff Samuel San Miguel in which he asks the Court to issue a temporary restraining order (TRO) and preliminary injunction. ECF Nos. 3, 4. San Miguel alleges that the Texas Civil Commitment Center (TCCC) has wrongfully placed him "in solitary confinement" and subjected him to conditions that violate his constitutional rights. Br. in Supp. of Order to Show Cause & TRO 2, ECF No. 4 [hereinafter Pl.'s Br.]; *see* ECF No. 1, at 3. After considering San Miguel's motion and applicable law, the Court recommends that the motion be **DENIED** without prejudice to San Miguel's right to request injunctive relief in the future should circumstances change.[1]

### I.   Legal Standard

"An injunction is an extraordinary remedy and should not issue except upon a clear showing of possible irreparable harm." *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976). When a plaintiff requests injunctive relief that would require the court to interfere with the

---

[1] San Miguel has not consented to proceed before a magistrate judge. *See* ECF No. 21. In accordance with the order of transfer and 28 U.S.C. § 636(b), the undersigned enters this Report.

1

administration of a state civil commitment[2] facility, "appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief." *Rizzo v. Goode*, 423 U.S. 362, 379 (1976). In assessing whether injunctive relief serves the public interest, prison administrators must be afforded deference in the manner in which they operate the prison. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). An injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989); *see Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) (citing cases for support) (explaining that "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule").

To secure an injunction or TRO, a movant must demonstrate:

1. A substantial likelihood of success on the merits of his case;

2. A substantial threat of irreparable injury if the injunction is not granted;

3. The threatened injury to the movant outweighs any damage the injunction will cause the non-movant; and

4. The injunction will not have an adverse effect on the public interest.

*Women's Med. Ctr. v. Bell*, 248 F.3d 411, 418–20 (5th Cir. 2001); *Hay v. Waldron*, 834 F.2d 481, 484 (5th Cir. 1987).

---

[2] This standard applies directly to injunctions relating to official conduct in state prisons and county detention centers. The Court recognizes that civilly committed persons are not prisoners, and their rights may differ from those of prisoners. *See Bohannan v. Doe*, 527 F. App'x 283, 289–90 (5th Cir. 2013) (per curiam) (holding that the Prison Litigation Reform Act does not apply to civilly committed sex offenders because they "are not prisoners," in accord with other circuits); *In re Commitment of Fisher*, 164 S.W.3d 637, 653 (Tex. 2005) (emphasizing that civil commitment "is a civil matter"). Nevertheless, this Circuit and other courts have addressed civil rights lawsuits from civilly committed individuals within the same substantive framework as similar suits brought by prisoners. *See, e.g., Smith v. Hood*, 900 F.3d 180, 186 (5th Cir. 2018) (citing *Youngberg v. Romero*, 457 U.S. 307, 316 (1982) for the proposition that due process rights that survive criminal incarceration "must also survive involuntary commitment"); *R.R. v. N.J. Dep't of Corrs.*, 962 A.2d 563, 568 (N.J. Super. Ct. App. Div. 2009) (upholding a visitation policy at a civil commitment center that was identical to the same policy at state prisons). This Court thus evaluates the likelihood of San Miguel's success on the merits by applying the same substantive standards to his case as would apply in a similar case brought by a prisoner.

## II. <u>Analysis</u>

Initially, the Court observes that San Miguel has not provided notice of his request for injunctive relief to the opposing parties. Under Rule 65, a preliminary injunction can only be issued after notice to the adverse party. *See* Fed. R. Civ. P. 65(a)(1). San Miguel has not shown that he has given notice to the persons subject to his request for injunctive relief. For this reason alone his motion should be denied.[3]

More importantly, San Miguel has not carried his burden with respect to any of the necessary criteria, including demonstrating a substantial likelihood of success on the merits of his § 1983 case or a substantial threat of irreparable injury if the Court does not grant relief.[4] San Miguel does not make clear—either in his motion or in his Complaint—the type of relief he seeks through the TRO and preliminary injunction. The Court interprets his pleadings as requesting the following: (1) complete release from civil confinement (*see* Pl.'s Mot. 1, ECF No. 3 (proposing that the Court declare Chapter 841 of the Texas Health and Safety Code—i.e., the Texas civil commitment statute—"so punitive, in purpose and effect that it negates the States [sic] intention to Deem it Civil" and is "criminal" in nature)); (2) removal from the secured management unit (SMU) (Pl.'s Mot. 2 (suggesting that the Court direct TCCC officials to modify his housing conditions and arguing that SVPs should not "be locked in their cell for any duration of time, or under any circumstance")); and (3) greater access to the law library. Pl.'s Br. 1 ("I begin this brief . . . in prayerful hope that I may be granted the requested TRO, that I may then, not be hindered in

---

[3] Under Fed. R. Civ. P. 65(b)(1), the Court may issue a TRO without notice to the adverse party, but only where: (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition"; and (2) the movant "certifies in writing any effort made to give notice and the reasons why it should not be required." San Miguel has not satisfied either element.

[4] San Miguel concedes as much, stating "I understand that at this time the complaint, and material facts submitted, are deficient [sic] to determine if I may succeed on the merits, however the TRO I request I believe speaks for itself." Pl.'s Br. 4.

my pursuit of this Civil Action, that I may look forward to not being denied by the defendants, the tools and material I need, as well as the adequate time in the Law Library . . . . I am in a housing condition that should not exist . . . .").

To the extent San Miguel asserts that the civil commitment statute is unconstitutional on its face, he has not established a substantial likelihood of success on the merits in this § 1983 action.[5] *See, e.g.*, Pl.'s Br. 4 ("I am to fight, and not quit until this (SVPA)ct [sic] Statute CH. 841., is seen & judged for what it is, nothing more than the continued imprisonment of Sex Offenders . . . ."), 6 ("The very reason I am filing the 'Order to Show Cause' as I am, is I and every civil detainee at this facility will do nothing more than continue serving a prison sentence, absent relief. . . . I was given a prison sentence, an Honorable Judge and Prosecuting Attorney signed their name to it and I completed it day for day. I have a family whom I love . . . its [sic] time I go home."). Courts have upheld as constitutional the Texas civil commitment scheme, which is found in Chapter 841 of the Texas Civil Practice and Remedies Code. *See, e.g., In re Commitment of Fisher*, 164 S.W.3d at 645–53 (upholding the constitutionality of the former version of the SVP act prior to the its amendment in 2015); *see also Kansas v. Hendricks*, 521 U.S. 346, 363–64, 369 (1997) (holding that the Kansas Sexually Violent Predator Act, which is similar to Texas's statute, is non-punitive and therefore constitutional); *Brown v. Taylor*, No. 4:12-CV-698-A, 2019 WL 2142496, at *5 (N.D. Tex. May 16, 2019) (citing cases for support) (noting that "[t]he constitutionality of the Texas civil commitment statute had been upheld by the Texas Supreme

---

[5] In the alternative, if San Miguel challenges the SVP statute as applied, his claim is barred by the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). *See Allen v. Seiler*, Civil Action No. 4:12–CV–414–Y, 2013 WL 357614, at *2–3 (N.D. Tex. Jan. 30), *aff'd*, 535 F. App'x 423, 423 (5th Cir. July 12, 2013) (per curiam) (dismissing some of SVP's claims as *Heck*-barred, where SVP challenged the state court's order of commitment, and compiling cases holding same); *see also Huftile v. Miccio-Fonseca*, 410 F.3d 1136, 1140 (9th Cir. 2005) (noting that *Heck* applies to civilly committed persons as well as prisoners); *Black v. Turner*, No. 5:17-CV-111-C, slip. op. at 3–4 (N.D. Tex. Sept. 7, 2017) (citing *Allen*, 2013 WL 357614, at *2–3) (dismissing SVP's § 1983 claim, which challenged the fact of his commitment, for failure to satisfy *Heck*'s conditions).

Court" and "the United States Supreme Court had repeatedly upheld civil commitment laws like those of Texas"); *Hitt v. McLane*, A–17–CV–289–SS, 2018 WL 773992, at *15–16 (W.D. Tex. Feb. 7, 2018) (upholding Chapter 841 as applied to plaintiff-SVP).

With respect to his request for release from the SMU, San Miguel appears to raise both substantive and procedural due process claims. Pl.'s Br. 2–4; Compl. 3–6, 9–10, ECF No. 1. In his Complaint, however, San Miguel concedes that "he has been asked by Defendants if he wants to leave the SMU multiple times in the past few months, yet he refuses because defendants will not return his property that they confiscated on 7-18-19 [sic], wrongfully . . . ."[6] Compl. 6. In other words, San Miguel's continued housing in the SMU, and any alleged injury arising therefrom, is by choice. Thus, San Miguel has not demonstrated a substantial threat of irreparable injury with respect to his alleged housing in the SMU. *See, e.g.*, *Benson v. Piper*, Case No. 17-cv-266 (DWF/TNL), 2017 WL 4221105, at *5 (D. Minn. July 31, 2017) (denying SVP's request for preliminary injunction in part because his refusal to return to regular housing caused his alleged injury and there was "no indication that absent [SVP's] voluntary actions [defendants] would be limiting his access to religious or gym facilities").

Finally, to the extent San Miguel asks the Court to direct Defendants to provide him additional time in the law library, he has not demonstrated a substantial likelihood of success on the merits or that he is suffering irreparable harm. In his pleadings, San Miguel argues that he is "not allowed to possess Lap-top Computers/Word-processes [sic], or printers to do [his] legal work, and that this has hindered San Miguel form [sic] filing his complaint." Compl. 5; *see also* Pl.'s Br. 14 ("I should not be denied a laptop computer with Microsoft 'Word' and a printer to do my legal work."). He further alleges that he has "an hour and a half law library session . . . [on

---

[6] San Miguel filed his Complaint on May 24, 2019. ECF No. 1. The Court therefore presumes that San Miguel intended to list the date as July 18, 2018—not 2019.

Wednesdays] the only day[.] [He] can print things off while [he's] there, TCCO acts like its [sic] a privildge [sic] for [him] to do [his] legal work and not [his] 1st amendment right." Pl.'s Br. 14–15.

To prevail on an access to courts claim, San Miguel must show that TCCC officials denied him access to the courts and that such a deprivation prejudiced him. *See Bohannan v. Griffin*, No. 4:11-CV-299-A, 2016 WL 3647625, at *13 (N.D. Tex. June 30, 2016) (citing *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996)). That is, Welsh must plead facts demonstrating "an actual injury arising from this purported denial." *Day v. Seiler*, 560 F. App'x 316, 319 (5th Cir. 2014) (citing *Lewis v. Casey*, 518 U.S. 343, 356 (1996)). Here, San Miguel acknowledges that he receives law library time—he simply believes that TCCC officials have not provided him *enough* time in the library. Compl. 5; Pl.'s Br. 14–15. As evidenced by San Miguel's extensive pleadings, he has not demonstrated at this juncture that the lack of access to a computer or printer is causing him any harm—e.g., that he has been unable to present his various claims or defenses.[7]

### III. Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Court deny San Miguel's request for injunctive relief (ECF No. 3).

### IV. Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. See 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific

---

[7] The Court further notes that San Miguel's Complaint, as well as his motion for TRO and a portion of his supporting brief, were created using a word processor. The Court can only conclude that he therefore has some access to a word-processing device.

finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: July 29, 2019

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE